IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY and THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, | * * * * * | |
| Plaintiffs, | * * | |
| vs. | * * | No. 4:15CV00532 SWW |
| EDGAR L. WILSON and PATRICIA RODDY on Behalf of the Estate of Dale Levon Metcalf, Deceased, | * * * * | |
| Defendants. | * * | |

## Opinion and Order

Plaintiffs, Travelers Home and Marine Insurance Company ("Travelers")  and the Automobile Insurance Company of Hartford, Connecticut ("Automobile"), bring this action for declaratory judgment against Edgar L. Wilson ("Wilson") and Patricia Roddy (Roddy") on behalf of the Estate of Dale Levon Metcalf.  Plaintiffs seek a determination that policies of insurance they issued to Wilson afford him no coverage with respect to claims made against Wilson by Roddy in underlying litigation in state court.  The matter is before the Court on Plaintiffs' motion for summary judgment.  Defendant Roddy responded in opposition to Plaintiffs' motion and Plaintiffs filed a reply to Roddy's response.  For the reasons that follow, the Court grants Plaintiffs' motion for summary judgment.

**Background**

The undisputed facts are as follows.[1]  Travelers issued homeowners policy number 984555151 633 1 to Edgar Wilson and Janet S. Wilson beginning in 2009.  The policy insured a dwelling located at 7 Apache Circle, Lonoke, Arkansas.  The relevant policy period is April 1, 2012 to April 1, 2013.  Mr. Wilson paid a premium for and the policy provided personal liability coverage pursuant to certain terms, limitations, exclusions, and conditions set forth in the policy.  Automobile issued a personal liability umbrella of security policy number 932779781 311 to Edgar Wilson and Janet S. Wilson beginning in 2009.  The relevant policy period is April 1, 2012 to April 1, 2013.  Mr. Wilson paid a premium for and the policy provided personal excess liability coverage pursuant to certain terms, limitations, exclusions, and conditions set forth in the policy.

In approximately 1999, Edgar and Janet Wilson purchased a liquor store in DeValls Bluff, Arkansas.  Sometime after 1999, but before the shooting at issue, the Wilsons transferred some of their holdings in the liquor store to a corporation known as Edgar L. Wilson Enterprises, Inc., which they owned.  The corporation did business as Happy Times Liquor.  Official records for the subject property in 2012 list the record owners as Edgar L. Wilson and Janet S. Wilson.  Edgar L. Wilson Enterprises, Inc. d/b/a Happy Times Liquor was separately insured by  Hartford Casualty Insurance Company ("Hartford") under a business liability policy.  Mr. Wilson not only owned the corporation that owned the liquor store but also was an employee of the liquor store.

On the night of September 14, 2012, Wilson and Brenda Dolphin were working at the liquor store.  Dale Levon Metcalf came on the liquor store's premises.  Mr. Wilson knew Metcalf from previous encounters with him in connection with the liquor store.  According to Wilson,

---

[1]The background is taken from Plaintiffs's Statement of Undisputed Facts which were all admitted by Defendant Roddy. *See* Separate Def. Roddy's Resp. to Statement of Undisputed Facts (ECF No. 32).

there had been several incidents between the two where Metcalf had cursed Wilson or threatened his employees.  Mr. Wilson had never know Metcalf to carry a gun or knife.

On the night at issue, Wilson took Dolphin outside the liquor store to point Metcalf out to her.  Ms. Dolphin claimed not to know Metcalf.  While outside, on the liquor store premises, Metcalf and Wilson engaged in a verbal argument.  At some point, Wilson pulled a .25 caliber pistol from his pocket and shot Metcalf.  The record reflects that Wilson had a concealed carry permit and was trained in the use of a weapon.  Mr. Metcalf died at the scene.

More than one eyewitness to the shooting says Metcalf turned to leave when Wilson charged him, shooting him in the back of the head.  Wilson said Metcalf charged him and he shot him in self  defense.  Mr. Wilson claims he thought Metcalf had a weapon but admits he never saw a weapon.  No weapon was ever recovered.

Dr. Steven Erickson, deputy medical examiner, a physician and forensic pathologist, testified the bullet Wilson fired entered Metcalf's head right in front of his left ear and traveled left to right, stopping just beneath the skin of his right temple.  Stippling on Metcalf's skin at the entrance wound indicated Wilson fired the gun at close range to Metcalf.  Dr. Erickson estimated the distance to have been three to four feet, which he described as a "can't miss distance."  He could not say from his examination how Metcalf's body was positioned, whether forward- or rear-facing, when Wilson shot him.  Dr. Erickson said either was possible.

Mr. Wilson was charged with murder in the first degree.  Following a two-day jury trial, he was found guilty of second degree murder.  The jury rejected his claim of self-defense.  Mr. Wilson was sentenced to fifteen years in the Arkansas Department of Correction.  He did not appeal and the time to appeal has run.

3

Mr. Metcalf's estate, by and through Roddy, filed a wrongful death lawsuit on March 12, 2013, against Wilson and Edgar L. Wilson, Inc.  In the complaint, Roddy alleges Metcalf was a customer of Edgar L. Wilson, Inc. d/b/a/ Happy Times Liquor Store, at the time of the shooting.  Ms. Roddy alleges Wilson's acts were intentional.

Mr. Wilson requested coverage under his personal and business policies.  Plaintiffs are providing a defense to Wilson under a reservation of rights.  Hartford is defending Wilson and his corporation under a reservation of rights also.  On August 26, 2015, Plaintiffs filed this action seeking a determination of whether Wilson's personal policies with them provide coverage to him for the shooting of Metcalf.  Plaintiffs named Wilson and Roddy, on behalf of Metcalf's estate, as defendants.  Mr. Wilson was served but has never appeared or answered.  Plaintiffs filed a motion for default judgment against him.  They now seek summary judgment.

### Standard of Review

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material act and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *see also Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249-50 (1986).  A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249.

### Discussion

In diversity cases, the federal courts look to the law of the forum state when interpreting the provisions of an insurance contract.  *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 925 (8th Cir. 2001).  If the language of the policy is ambiguous, courts will construe the policy liberally in

favor of the insured and strictly against the insurer.  *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d

165, 169 (Ark. 2001).  "Language is ambiguous if there is doubt or uncertainty as to its meaning

and it is fairly susceptible to more than one reasonable interpretation."  *Id.*  Whether language of

the policy is ambiguous is ordinarily a question of law to be decided by the court.  *Castaneda v.*

*Progressive Classic Ins. Co.*, 166 S.W.3d 556, 561 (Ark. 2004).

The homeowners policy Travelers issued to Wilson and his wife insures a dwelling in

Lonoke, Arkansas.  Under Section II - Liability Coverages, Coverage E - Personal Liability, the

policy provides:

> If a claim is made or a suit is brought against an 'insured' for damages because of
> 'bodily injury' . . . caused by an 'occurrence' to which this coverage applies, we
> will:
>
> 1.      Pay up to our limit of liability for the damages for which an 'insured' is
>         legally liable . . . and
>
> 2.      Provide a defense at our expense by counsel of our choice, even if the suit
>         is groundless, false or fraudulent[.]

Pls.' Mot. Summ.J., Ex. A (ECF No, 25-1) at 000026.

The homeowners policy defines "insured," in relevant part, as "a. you and residents of

your household who are: (1) Your relatives; or (2) Other persons under the age of 21 and in the

care of any person named above."  Ex. A at 000011.  "Bodily injury" is defined as "bodily harm,

sickness, or disease, including required care, loss of services, and death that results."  Ex. A at

000010.  The homeowners policy defines "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions, which results during the

policy period, in: a. 'bodily injury'[.]"  Ex. A at 000012.

As to exclusions from coverage, the homeowners policy provides:

5

Section II - Exclusions, A. Coverage E - Personal Liability and Coverage F - Medical Payments to Others.

Coverages E and F do not apply to 'bodily injury' . . .:

1.  Which is expected or intended by an 'insured' even if the resulting 'bodily injury' . . .:

a.  Is of a different kind, quality or degree than initially expected or intended; or

b.  Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion A.1 does not apply to 'bodily injury' resulting from the use of reasonable force by an 'insured' to protect persons or property.

2.  Arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured', whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured.'

. . .

4.  Arising out of a premises:

a.  Owned by an 'insured';

b.  Rented to an 'insured'; or

c.  Rented to others by an 'insured';

that is not an 'insured location';

Ex. A at 000028.  The homeowners policy defines "business" as:

a.  A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

b.  Any other activity engaged in for money or other compensation, except the following:

> (1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

> (2) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

6

(3) Providing home day care services to a relative of an 'insured'.

Ex. A at 000010.   "Insured location" is defined as:

a.  The 'residence premises",

b.  The part of other premises, other structures and grounds used by you as a
residence and:

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use
as a residence.

c.  Any premises used by you in connection with a premises described in a. and b.
above;

d.  Any part of a premises:

(1) Not owned by an 'insured', and

(2) Where an 'insured' is temporarily residing;

e.  Vacant land, other than farm land, owned by or rented to an 'insured';

f.  Land owned or rented to an 'insured' on which a one or two family dwelling is
being built as a residence for an 'insured';

g.  Individual or family cemetery plots or burial vaults of an 'insured';

h.  Any part of a premises occasionally rented to an 'insured' for other than
'business' use;

I.  Any premises owned by you and rented to others for use as a residence by not more
than four families, if shown in the Declarations as an ADDITIONAL RESIDENCE
RENTED TO OTHERS; or

j.  Any other structure on the 'residence premises' rented to others as a private residence
for which a limit of liability is shown in the Declarations for STRUCTURES
RENTED TO OTHERS.

Ex. A at 000011-000012.

The personal liability umbrella of security policy issued by Automobile provides that the

7

insurer "will pay damages for which an 'insured' becomes legally liable due to 'bodily injury' . . . caused by an 'occurrence.'  This coverage applies only to damages in excess of the 'retained limit'."  Pls.' Mot. for Summ. J., Ex. B at 000055.  The umbrella policy defines 'insured' as "1) You[.]" Ex. B at 000055.  "'Bodily injury'" means bodily harm, sickness or disease.  It includes required care, loss of services, death and mental anguish that results."  Ex. B at 000055.   The policy defines "occurrence" as " a. An accident, including continuous or repeated exposure to substantially the same general conditions, that results in 'bodily injury' . . .  during the policy period."  Ex. B at 000056.

The umbrella policy issued by Automobile contains certain exclusions when "an 'insured' becomes legally liable due to 'bodily injury' . . . caused by an 'occurrence'[.]" Ex. B at 000055. The relevant provisions are:

> EXCLUSIONS
>
> This insurance does not apply:
>
> 1.   To 'bodily injury' . . . arising out of an act which is expected or intended by an 'insured' to cause 'bodily injury'[.] This exclusion applies even if the 'bodily injury' . . . :
>
>    a.  Is of a different kind, quality or degree than expected or intended; or
>
>    b.  Is sustained by a different person or entity than expected or intended.
>
>    However, this exclusion does not apply to:
>
>    a.  'Bodily injury' resulting from the use of reasonable force by an 'insured' to protect persons or property[.]
>
> 2.   To 'bodily injury' . . . arising out of 'business' pursuits or 'business' property of any 'insured[.]'

Ex. B at 000057.  The umbrella policy defines "business" as a "trade, profession or occupation."

Ex. B at 000055.

Plaintiffs argue they are entitled to summary judgment because based on the allegations of the underlying complaint there is no possibility of coverage. They also argue defendants are barred by the doctrine of collateral estoppel from arguing coverage exists or is excluded to Wilson. Lastly, they allege there is no coverage or coverage is excluded under the policies. In response, Roddy argues collateral estoppel does not exclude Wilson from coverage and that there is a genuine issue of material fact as to whether Wilson acted in self-defense and whether the shooting is an "occurrence."

As a general matter, the duty to defend is determined by comparing the allegations in the underlying complaint to the scope of the coverage provided by the insurance policy. *Insurance Co. of North Am. v. Forrest City Country Club*, 819 S.W.2d 296 (Ark. 1991). Under Arkansas law, the duty to defend is broader than the duty to indemnify, and it arises when there is a possibility that the injury or damage may fall within the policy coverage. *Murphy Oil USA Inc. v. Unigard Security Ins. Co.*, 61 S.W.3d 807, 812-13 (Ark. 2001). In testing the pleadings to determine if they state a claim within the liability policy coverage, a court must resolve any doubt in favor of the insured. *Id* . at 814. Courts are not, however, required by the rules of contractual construction to stretch their imaginations to create coverage where none exists. *Pate v. U.S. Fid. & Guar. Co.*, 685 S.W.2d 530, 532 (Ark. 1985).

The underlying complaint alleges that Wilson, acting as an employee of the liquor store, intentionally shot Metcalf who was a customer of the liquor store. The policies only cover an "occurrence," which is defined as an "accident." An "accident" is defined as "an event that takes place without one's foresight or expectation - an event that proceeds from an unknown cause, or

is an unusual effect of a known cause, and therefore not expected." *Continental Ins. Co. v. Hodges*, 534 S.W.2d 764, 765 (Ark. 1976)(internal citation and quotation omitted).  *See also United States Fid. & Guar. Co. v. Continental Cas. Co.*, 120 S.W.3d 556 (Ark. 2003); *Essex Ins. Co. v. Holder*, 261 S.W.3d 456 (Ark. 2007).  The complaint alleges Wilson's actions were intentional.  Plaintiffs argue there is no possibility that his act of shooting Metcalf could have been an accident.

Plaintiffs also assert the doctrine of collateral estoppel bars defendants from relitigating whether Wilson expected or intended to injure Metcalf.  Issue preclusion or collateral estoppel bars relitigation of the same issue in a subsequent case when four elements are met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue sought to be precluded must have been actually litigated in the prior action; (3) the issue sought to be precluded must have been determined by a valid and final judgment; and (4) the determination in the prior action must have been essential to the prior judgment."  *Powell v. Lane*, 289 S.W.3d 440, 444 (Ark. 2008).  In *Zinger v. Terrell*, 985 S.W.2d 737 (Ark. 1999), the Arkansas Supreme Court held that a prior criminal conviction for murder acts as a bar to relitigating the same issue for the same defendant in a civil court action.  Zinger was convicted of first-degree murder of her mother.  Zinger was a beneficiary on her mother's life insurance policies, and the court held that she was collaterally estopped from relitigating her guilt in a later civil proceeding to inherit or take her mother's property.  The Arkansas Supreme Court said: "We are convinced that the time has come to overrule our case law and join the prevailing view that a prior criminal conviction for murder acts as a bar to relitigating the same issue for the same defendant in civil court."  985 S.W.2d at 741.  *See also Bradley Ventures, Inc. v. Farm Bureau Mut. Ins. Co.*, 264 S.W.3d 485

(Ark. 2007) (*Zinger* created narrow exception for a murder conviction).

Mr. Wilson was found guilty of second degree murder.  A person is guilty of second degree murder if he "knowingly causes the death of another under circumstances manifesting extreme indifference to the value of human life; or With the purpose of causing serious physical injury to another person, the person causes the death of any person."  Ark. Code Ann. §5-10-103 (a)(1) -(2).

A person acts knowingly with respect to:

(A)     The person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or

(B)     A result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result.

The Court finds that based on the allegations of the complaint, plaintiffs have no duty to defend or indemnify Wilson.  The Court additionally finds the doctrine of collateral estoppel bars defendants from relitigating the issue of whether there was an "occurrence" or whether Wilson expected or intended Metcalf's bodily injury.  "Knowingly" causing bodily injury is the same as expecting or intending it.  The jury's criminal verdict forecloses a finding of coverage under the policies.

Ms. Roddy claims there is a genuine issue of fact as to whether Wilson acted in self-defense.  The policies contain exceptions for use of reasonable force to protect persons or property.  The jury rejected Wilson's claim of self-defense.  Collateral estoppel precludes defendants from relitigating whether Wilson used reasonable force to protect himself.

Even if the allegations of the complaint or collateral estoppel are not determinative of

coverage, the Court finds that the plain language of the policies establish there is no coverage. There is no evidence of an "occurrence."  Even if there were an "occurrence," there are exclusions that abrogate coverage in this situation.  Coverage is excluded under the homeowners policy for "bodily injury" expected or intended by an "insured."  Mr. Wilson shot and killed Metcalf.   Mr. Wilson had a concealed carry permit, he carried a .25 caliber handgun, was trained to use it, and shot Metcalf at close range.  He expected or intended bodily harm to Metcalf.  *See Fireman's Ins. Co. v. Smith*, 683 S.W.2d 234, 237 (Ark. App. 1985)( "The intent to inflict injury can be inferred from the very character of the act. Any reasonable person would expect or intend serious injury to be inflicted by shooting another at point blank range with a .38 caliber pistol. Reasonable minds could not conclude otherwise").

Coverage is also excluded under the homeowners policy for "bodily injury" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured," whether or not the "business" is owned or operated by an "insured" or employs an "insured."  "Business" is defined under the homeowners policy as " a.  A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or  b.  Any other activity engaged in for money or other compensation, except the following: (1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity; (2) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or (3) Providing home day care services to a relative of an 'insured'."

The evidence is undisputed that Wilson was working at the liquor store at the time of the shooting and that work constituted a "business" as defined by the policy.  Mr. Metcalf's death arose out of or in connection with the business engaged in by Wilson.  The undisputed facts are

that Wilson was pointing out Metcalf to Dolphin as someone with whom Wilson had issues in connection with the liquor store.

The homeowners policy also excludes coverage for "bodily injury" arising out of premises owned by an "insured" that is not an "insured location."  The liquor store property, which Wilson owned, was not an "insured location" because it was not Wilson's residence premises.  It also does not meet any of the other definitions of "insured location."  Mr. Metcalf's shooting arose out of the liquor store.  He and Wilson were arguing about Metcalf being on the liquor store property when Wilson shot Metcalf.

Lastly, Plaintiffs argue that if there is no coverage under the homeowners policy, there should be no coverage under the umbrella policy.  Like the homeowners policy, the personal umbrella of security policy defines "occurrence" as an "accident."  Further, even if there were an "occurrence" under the umbrella policy, the exclusions for expected or intended "bodily injury" and for "bodily injury" arising out of "business" pursuits or "business " property of the "insured" would negate coverage.  Ms. Roddy raises an argument that the definition of "occurrence" in the umbrella policy includes "[a]n offense . . . committed during the policy period, that results in "personal injury.'" Pls.' Mot. Summ. J., Ex. B at 000056.  "'Personal injury' means an injury caused by any of the following offenses committed during the policy period: a.  False arrest, detention or imprisonment, or malicious prosecution[.]'" *Id*.  Ms. Roddy points to testimony that Metcalf was attempting to leave the liquor store premises when Wilson shot him and that could be considered an offense of detention.

There is no allegation that Wilson detained Metcalf.  Even if the definition of "personal injury" were applicable, exclusions apply.  Further, the umbrella policy coverage applies "only to

13

damages in excess of the 'retained limit.'" *Id*. at 000055. "'Retained limit' means the greater of: a. The total limits of any other insurance that applies to the 'occurrence' which is available to an 'insured;' or b. The applicable deductible amount shown in the 'Declarations'". *Id.* at 000056.

Because there are no genuine issues of material fact in dispute as to the duty to defend or indemnify Wilson under the policies of insurance provided by Travelers and Automobile, the Court finds summary judgment should be granted in their favor.

Also pending before the Court is Plaintiffs' motion for default judgment against Wilson. In its motion, Plaintiffs state Wilson, who is incarcerated and was properly served, failed to answer or otherwise respond to the complaint. Plaintiffs sought and received a Clerk's Default. The Court finds Plaintiffs have satisfied the requirements for securing a default judgment against Wilson. *See* Fed.R.Civ.P. 55(b)(2). The Court therefore will grant the motion for default judgment.

## Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' motion for summary judgment [ECF No. 25] is granted. Plaintiffs' motion for default judgment [ECF No. 17] is granted. Plaintiffs owe Wilson no duty to defend or indemnify Wilson as to the claims against him in the underlying action. Judgment will be entered accordingly.

DATED this 22nd day of September, 2016.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE